UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------x
BRENDA FLORES,

    Plaintiff,

vs.                                     **FIRST AMENDED COMPLAINT**

YONKERS BOARD OF EDUCATION,     06 CIV 7086 (CLB)

    Defendant.
----------------------------------------------x

    By and through her counsel, Sussman & Watkins, plaintiff hereby complains of defendant as follows:

**PARTIES**

    1. Plaintiff, Brenda Flores, is an Hispanic of Puerto Rican descent and dark skin who resides within this judicial district.

    2. Plaintiff is of legal age and may sue and be sued.

    3. Defendant, the Yonkers Board of Education, is a municipal corporation organized pursuant to the laws of the State of New York. It may sue and be sued.

## **JURISDICTION**

4. As plaintiff alleges that defendant violated her federal protected rights, this Court has jurisdiction over this matter pursuant to 28 U.S.C. secs. 1331, 1343 © & (d). Pursuant to 28 U.S.C. sec. 1367, this Court has jurisdiction over the supplemental state claims which arise from the same nucleus of facts as the federal claims. 42 U.S.C. sec. 1988 provides this Court with jurisdiction to award reasonable attorneys' fees and litigation costs to plaintiff.

## **FACTUAL AVERMENTS**

5. Plaintiff began teaching in the Yonkers Public Schools as a regular substitute at Gorton High School in September 2003.

6. Starting in November 2003, plaintiff received "satisfactory" formal and informal [walk-through] classroom observations from school administrators at Gorton.

7. On or about February 10, 2004, then Superintendent of Schools Angelo Perrone advised plaintiff that her services would not be required after June 28, 2004 at Gorton, but that "there is

reasonable assurance that you will be employed by the Yonkers Public Schools during the 2004-2005 school year in the same capacity as this past year."

8. In June 2004, Rocco Grassi, then principal of Gorton High School, wrote a positive set of evaluative comments concerning plaintiff's achievements during her first year at Gorton.

9. In late August 2004, both Grassi and one of Gorton's Assistant Principals, Vernon M. Byron, Jr., wrote very supportive letters of recommendation for plaintiff.

10. In September 2004, again employing her as a regular substitute [not on tenure track], defendant assigned plaintiff to teach third grade at School 18, the scholastic academy.

11. In early October 2004, plaintiff received a highly positive initial observation at this school.

12. The following month, a second administrator observed her and noted, "Ms. Flores' nurturing demeanor motivates students to strive for academic excellence" and "Classroom

environment was conducive to student learning."

13. In January 2005, Scholastic Academy's principal observed plaintiff and found her class "satisfactory."

14. In April 2005, one of the school's Assistant Principals conducted another formal observation and again found plaintiff's class satisfactory and made positive comments about her work.

15. In early May 2005, Superintendent Petrone advised plaintiff that her "services as a regular substitute teacher with the Yonkers Public Schools will no longer be required effective at the close of the day, June 29, 2005." The same letter advised that the district expected to have a position available for plaintiff at the commencement of the following school year.

16. Effective September 1, 2005, defendant employed plaintiff as a probationary teacher at a salary of move than $68,000.

17. Despite plaintiff's objection, defendant assigned her to the Montessori School [31] effective September 2005.

18. Plaintiff protested this assigned because she was not

properly trained in Montessori education and felt she could not fully serve students choosing that program as part of Yonkers' magnet schools.

19. In early November, plaintiff received a satisfactory formal observation from the school's principal, Dr. Ann Braio.

20. Between November 2005 - January 2006, plaintiff had several conflicts with the administration at School 31.

21. For instance, ill on January 13, 2006, plaintiff called in her absence in a timely manner.

22. On the same day, her principal accused plaintiff of having a "lack of commitment" which was "contrary to the accepted standards of conduct of this staff."

23. Dr. Braio threatened, "if your commitment to students does not improve, this will contribute to and have a potential negative impact upon your achieving tenured and/or annual evaluation."

24. One week later, Dr. Braio observed plaintiff and found her lesson satisfactory.

25. Despite this, Dr. Braio found ways to baselessly criticize plaintiff's performance.

26. These comments upset plaintiff and caused her anxiety.

27. In February 2006, the parents of one of plaintiff's students complained about the education their son was receiving.

28. Again, Dr. Braio approached plaintiff in a highly indicting and accusatory manner, siding with the complaining parents and disbelieving plaintiff's explanations of her interaction with their child and them.

29. On March 17, 2006, defendant transferred plaintiff from School 31 to the Enrico Fermi School.

30. Within two weeks of her arrival, following a staff-walk through, one school administrator wrote, "Ms. Flores level of enthusiasm brought out student attention and achievement."

31. Though she had been transferred from School 31/Montessori the month before, on April 12, 2006, School Superintendent Bernard P. Pierorazio wrote that he intended to recommend the termination of her services as a Montessori Grade

5-6 teacher "effective end of day August 31, 2006".

32. Plaintiff requested an informal hearing concerning the reasons for her termination.

33. Meanwhile, on April 18, 2006, another administrator conducting a walk through observation wrote, "Ms. Flores has done a great job in assuming the role of the classroom teacher. The students are producing great work.

34. Similarly, the following week, another administrator complimented plaintiff's work with the students.

35. In late April, an Assistant Principal conducted a formal observation of plaintiff's class, writing, "Ms. Flores has established classroom procedures and rules for student interaction that were consistently applied.  She implements positive, supportive and respectful classroom management techniques.  She maintains an instructional environment conducive to learning.  The class was working well together during this assignment."

36. Four days later, another observation commented on the

effective classroom techniques plaintiff was employing with her students.

37. Plaintiff has assiduously sought comparable employment without success.

38. Through her counsel, plaintiff appealed to defendant for another opportunity to demonstrate her tenure-worthiness.

39. To date, agents of the district have not replied affirmatively to this request and plaintiff remains unemployed.

40. By dint of her termination, plaintiff has suffered economic and non-economic damages, including emotional distress, anxiety and humiliation.

41. Defendant has provided similarly-situated white teachers a "fourth" year to establish their tenure-worthiness despite negative prior observations or evaluations.

42. Defendant has historically substantially under-employed Hispanic teachers.

43. Defendant has otherwise mistreated Hispanic/Latino teachers in a systematic manner by placing them in a separate

seniority list [for bi-lingual teachers, a group overwhelmingly comprised of Hispanic teachers] and failing to recognize their seniority and certifications.

44. The acts and omissions taken toward plaintiff were intentional and reflect discrimination based upon her race.

44-A. On or about January 31, 2007, plaintiff timely filed with the EEOC a complaint of race and national origin discrimination based on the foregoing facts. On June 6, 2007, she received a right-to-sue notice from the Department of Justice.

**CAUSES OF ACTION**

45. Plaintiff incorporates paras. 1-44-A as if fully re-written herein.

46. By terminating plaintiff's employment, defendant, acting by and through its agents, intentionally discriminated against her on the basis of her race in violation of 42 U.S.C. secs. 1981, as amended, and 1983 [equal protection clause] and the Executive Law of the State of New York, section 296.

47. By failing to offer plaintiff the opportunity to return for a

second year of probation, defendant intentionally denied plaintiff terms and conditions of employment offered to similarly-situated Caucasians, thus violating the equal protection clause of the Fourteenth Amendment and the Executive Law of the State of New York, section 296.

48. By dint of the foregoing, defendant violated plaintiff's rights to be free from race and national origin discrimination as made actionable by Title VII of the Civil Rights Act of 1964, as amended.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff prays that this Honorable Court:

a) accept jurisdiction over this cause and the claims asserted herein;

b) empanel a jury to hear and decide those questions within its authority;

c) award make whole compensatory relief to the plaintiff and as against defendant;

d) order defendant to re-employ plaintiff for another year

and to fairly adjudge her for tenure during that year and

e) enter any other relief which the interests of law and equity require.

Respectfully submitted,

MICHAEL H. SUSSMAN [3497]

SUSSMAN & WATKINS
PO BOX 1005
40 Park Place
GOSHEN, NY 10924
(845)-294-3991

COUNSEL FOR PLAINTIFF